UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IBTISAM S. S.,

               Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

               Defendant.
_____/

Case No. 24-12983

Matthew F. Leitman
United States District Judge

Curtis Ivy, Jr.
United States Magistrate Judge

**REPORT AND RECOMMENDATION ON CROSS-MOTIONS
FOR SUMMARY JUDGMENT (ECF Nos. 12, 14)**

## I.     INTRODUCTION

Plaintiff Ibtisam S. S. filed a Title II application for a period of disability and disability insurance benefits on October 14, 2021, and a Title XVI application for supplemental security income on November 18, 2021, each alleging disability beginning on October 11, 2020.  (ECF No. 9-1, PageID.267–69, 284–92).  The applications were denied at the initial administrative level on August 17, 2022, and upon reconsideration on January 23, 2023.  (*Id.* at PageID.176–84, 188–94).  Plaintiff then requested and later received a hearing before an Administrative Law Judge ("ALJ") on August 18, 2023.  (*Id.* at PageID.73, 195).  Following the hearing, the ALJ issued an unfavorable decision, and the Appeals Council denied Plaintiff's request for review on October 22, 2024.  (*Id.* at PageID.28–36).  The

ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").  *See Kearney v. Colvin*, 14 F. Supp. 3d 943, 949 (S.D. Ohio 2014) (citing *Wireman v. Comm'r of Soc. Sec.*, 60 Fed. App'x 570 (6th Cir. 2003); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 832 (6th Cir. 2006).  The case is now before the court for review of that decision under 42 U.S.C. § 405(g).  On January 2, 2025, the District Judge referred this matter to the undersigned to review the Commissioner's decision denying Plaintiff's claim for of social security benefit.  (ECF No. 7).

After careful scrutiny of the record and the Parties' briefs, and for the reasons below, the undersigned **RECOMMENDS** that Plaintiff's *Motion for Summary Judgment* (ECF No. 12) is **DENIED**, the Commissioner's *Motion for Summary Judgment* (ECF No. 14) is **GRANTED**, and the administrative decision is **AFFIRMED**.

## II.    STANDARD OF REVIEW

The Court's review of the Commissioner's decision is a limited one.  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the

Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Even so, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'"  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial evidence

standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## III.   STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. *See* 42 U.S.C. § 423(a).  The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program.  SSI is a public assistance measure providing another resource to the aged, blind, and disabled to ensure that their income does not fall below the poverty line.  Eligibility for SSI is based on proof of indigence and disability.  *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)–(C).  That said, while they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for determining whether a claimant is disabled.  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  Applicants under DIB and SSI must prove "disability" within the meaning of the Social Security Act which defines disability in virtually identical language for both programs.  *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a).

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; (4) can return to past relevant work; and (5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §§ 404.1520, 416.920.[1] The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that there is work available in the national economy the claimant can perform. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five.") (citing *Young v. Sec'y of Health & Hum. Servs.*, 925 F.2d 146, 148 (6th Cir. 1990)).

---

[1] Citations to the regulations or Social Security Rulings are to those effective on the date of the application for disability benefits or the ALJ's decision, where appropriate, unless otherwise indicated.

## IV.   ADMINISTRATIVE PROCEEDINGS

Plaintiff was 50 years old on the alleged disability onset date.  (ECF No. 9-1, PageID.57).  She lives in Dearborn Heights, Michigan, with her husband.  (*Id.* at PageID.49).  She completed her education outside the United States "through the 2nd level of middle school," which "would appear to be the equivalent of completion of the 7th grade."  (*Id.* at PageID.58).  Plaintiff's primary complaints include lumbar condition, right shoulder condition, heart condition, depression, and anxiety.  (*Id.* at PageID.285).  In the past, Plaintiff worked as a fast-food attendant, housekeeper, and production worker.  (*Id.* 286).

Following an administrative hearing, and employing the five-step process, the ALJ found at **Step One** that Plaintiff "has not engaged in substantial gainful activity since October 11, 2020, the alleged onset date[.]"  (*Id.* at PageID.39).  At **Step Two**, the ALJ found that Plaintiff suffers from the following severe impairments under 20 C.F.R. §§ 404.1520(c) and 416.920(c): lumbar spondylosis; lumbar radiculopathy; scoliosis of thoracolumbar region; disorder of the right shoulder; history of morbid obesity (status post gastric sleeve); and depression.  (*Id.* at PageID.40).  But the ALJ concluded at **Step Three** of the analysis that none of Plaintiff's impairments, nor a combination of her impairments, met or medically equaled the severity of one of those listed in the applicable regulations.  (*Id.* at PageID.42).  Next, the ALJ articulated Plaintiff's RFC as follows:

6

> [T]the claimant has the [RFC] to perform light work as defined in 20 CFR [§§] 404.1567(b) and 416.967(b) except the claimant cannot climb ladders, ropes or scaffolds or crawl; the claimant can occasionally climb ramps and stairs; the claimant can occasionally balance, stoop, kneel and crouch; the claimant can occasionally reach overhead with the right upper extremity; the claimant cannot engage in use of moving machinery or work at unprotected heights; work limited to simple and routine tasks; the claimant can tolerate occasional changes in the work setting; the claimant can engage in occasional decision making; and the claimant can have occasional interaction with the public and coworkers.

(*Id.* at PageID.48).  At **Step Four**, having consulted a VE, the ALJ concluded that Plaintiff has past work as cleaner/housekeeper (unskilled/light, but heavy as performed by Plaintiff) and general inspector (semi-skilled/light, but medium as performed by Plaintiff), but she "is unable to perform any past relevant work."  (*Id.* at PageID.57).  The ALJ next concluded, at **Step Five**, that "there are jobs that exist in significant numbers in the national economy that the claimant can perform."  (*Id.* at PageID.58).  Based upon the testimony of the vocational expert ("VE"), the ALJ identified the following as representative occupations: a "order filler" (unskilled, light work), a "packer" (unskilled, light work), and a "sorter" (unskilled, light work).  (*Id.* at PageID.59).  Accordingly, the ALJ concluded that Plaintiff "has not been under a disability [. . .] since October 11, 2020, through the date of this decision[.]"  (*Id.* at PageID.59–60).  Based on these findings, the ALJ denied Plaintiff's claim.  (*Id.* at PageID.34).

## V.   DISCUSSION

Plaintiff presents one issue for the Court to consider in its review of the Commissioner's decision: Whether the ALJ erred by rejecting Plaintiff's need for a cane.  (ECF No. 12, PageID.977).

Plaintiff's appeal focuses on her use of a cane and the ALJ's rejection of the medical necessity of a cane.  (ECF No. 12, PageID.990).  She argued that the ALJ failed to consider objective evidence and her testimony that supports the use of a can and that the ALJ failed to articulate her reasoning for rejecting cane use in the RFC.  (*Id.* at PageID.990–95).

An ALJ's conclusion that a cane or other assistive device is not medically necessary can be error when: "(i) the claimant has been prescribed an assistive device; (ii) the ALJ did not include the use of the device in the RFC assessment; and (iii) did not provide an explanation for the omission."  *Austin v. Comm'r of Soc. Sec.*, No. 1:19-CV-2380, 2020 WL 9460505, at *13 (N.D. Ohio July 7, 2020), *report and recommendation adopted*, 2021 WL 1540389 (N.D. Ohio Apr. 19, 2021).  The ALJ did not include the use of a cane in the RFC here, but she explained the omission.  As explained below, that omission is supported by substantial evidence, and even if the ALJ erred in the RFC, the error is harmless given the VE's testimony.

There is not much evidence related to Plaintiff's use of a cane in the record. Plaintiff draws the Court's attention to her August 2023 hearing testimony and to the June 13, 2023, Medical Source Statement and examination completed by Dr. Sarsam. (ECF No. 9-1 766–67, 853).

During the August 18, 2023, hearing before the ALJ, the ALJ noted that Plaintiff was using a cane that day, and Plaintiff testified that she was prescribed the cane around seven or eight months before the hearing. (ECF No. 9-1, PageID.90). Plaintiff was asked if she was able to stand without the use of her cane and she responded that she could, but the pain would be unbearable; though she stated that she had not attempted to determine the exact amount of time she could stand or walk without a cane. (*Id.*).

Dr. Sarsam submitted a June 13, 2023, Medical Source Statement of Ability to do Work-Related Activities noting that Plaintiff could sit for twenty minutes, stand for fifteen minutes, and walk for ten minutes at a time without interruption. (*Id.* at PageID.767.) Dr. Sarsam checked the box for "No" when asked if Plaintiff required the use of a cane to ambulate. (*Id.*). Even so, during the examination conducted on the same day, under "Diagnosis and Plan" section, with the diagnosis for chronic knee pain Dr. Sarsam noted "[c]ane for safety & mobility." (*Id.* at PageID.853). Plaintiff does not cite any other evidence in the record that reflects Plaintiff's required use of a cane, nor can the undersigned find any.

9

Plaintiff points primarily to her own subjective complaints to support her need for a cane and the impact it allegedly has on her work-related abilities and that Dr. Sarsam documented Plaintiff's need for a cane "for safety and mobility." (ECF No. 12, PageID.990–95). She also asserts that Dr. Sarsam checking the "No" box in the medical source opinion regarding Plaintiff's need for a cane must have been "simply human error." (*Id.* at PageID.992–93). Still, this argument is based on pure conjecture. Dr. Sarsam is the only medical provider Plaintiff points to for the proposition that the cane was medically necessary. (*Id.* at PageID.981–95).

Upon review of the evidence, the ALJ found:

Of note, the claimant testified that she utilizes a cane for ambulation (Hearing Testimony). The undersigned has considered the potential implications of this factor, pursuant to SSR 96-9p. However, in this case, it does not appear that the record supports a cane being medically required. First and foremost, the undersigned notes that the record does not appear to contain a script for use of a cane and the claimant has not been observed utilizing a cane during appointments with her own providers. Moreover, there does not appear to be medical documentation establishing the need for a hand-held assistive device to aid the claimant in walking or standing and describing the circumstances for which it is needed (i.e., whether she requires a cane all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information) (SSR 96-9p). Further, it was also noted that the claimant ambulated with a normal gait during medical appointments with her providers (B3F/2, 5, 8, 16, 19, 22; B16F/8). She also did not present with a cane during the consultative examination with Dr. Pollock. Finally, the claimant's primary care provider authored an opinion . . . and noted that the claimant did not need an assistive device for ambulation (B14F). As such, it did not

appear reasonable to include a limitation within the residual functional capacity that the claimant requires a cane for ambulation.

(ECF No. 9-1, PageID.54).  The ALJ then discussed Dr. Sarsam's June 2023 medical opinion in detail and found that the extreme limitations were not persuasive.  (*Id.* at PageID.54–55).  The ALJ found that opinions were made outside of his specialization and inconsistent with his own treatment records, which did not reflect significant abnormalities to warrant such extreme limitations. (*Id.* at PageID.55).

For example, the ALJ found that Dr. Sarsam's records "did not appear to indicate that [Plaintiff] had abnormalities in her gait during his examinations," and he only recommended conservative treatment for her musculoskeletal complaints. (*Id.*).  The ALJ noted that it is "reasonable to assume" Plaintiff would have limitations related to her musculoskeletal condition; but "the extreme limitations contained within this opinion are not supportable."  (*Id.*).  The ALJ reached this conclusion because she found that they appeared to be primarily based on Plaintiff's subjective complaints, and they are internally inconsistent. (*Id.*).  Of relevance, the ALJ noted inconsistencies that include that Dr. Sarsam found Plaintiff could only walk for ten minutes at a time, has significant postural and manipulative limitations, but she is able to shop, travel without assistance, ambulate without assistive device, walk a block at a reasonable pace on rough or uneven surfaces, and can use public transportation.  (*Id.*).  Similarly, the ALJ noted

11

that Dr. Sarsam's past treatment records consistently indicated that Plaintiff did not have abnormalities in her gait upon examination. (*Id.*). As such, the ALJ found that "this opinion is not persuasive as a whole." (*Id.* at PageID.56). The ALJ concluded that after considering the record as a whole, "when coupled with the relatively stable symptomology as outlined in the medical record, support a finding that the claimant retains the capacity to perform the modified range of 'light' work activity outlined in the above-referenced residual functional capacity assessment with the specified limitations." (*Id.* at PageID.57).

"SSR 96-9p states, 'To find that a hand-held assistive device is medically required, there must be medical documentation [1] establishing the need for a hand-held assistive device to aid in walking or standing, and [2] describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information).'" *Palmer v. Comm'r of Soc. Sec.*, No. 19-CV-11020, 2020 WL 5209358, at *4 (E.D. Mich. Sept. 1, 2020) (quoting SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996)). The mere prescription of a cane does not establish a cane is medically required under 96-9p. *Salem v. Colvin*, No. 14-CV-11616, 2015 WL 12732456, at *4 (E.D. Mich. Aug. 3, 2015) (finding that ALJ did not err in not including a limitation for a cane, when it had been prescribed, but the prescription did not "indicate the circumstances in which [the claimant] might require the use of

12

a cane."); *Schwartz v. Comm'r of Soc. Sec. Admin.*, No. 4:18-CV-12190, 2019 WL 3943863, at *6 (E.D. Mich. Aug. 1, 2019), *report and recommendation adopted* 2019 WL 3936666 (E.D. Mich. Aug. 20, 2019); *Marko v. Comm'r of Soc. Sec.*, No. 2:16-CV-12204, 2017 WL 3116246, at *5 (E.D. Mich. July 21, 2017) (holding that nothing in a "mere prescription for a cane provides evidence to indicate the frequency with which the cane should be used, its purpose, or its limit upon Plaintiff's ability to perform light work.").

The ALJ indicated that there "does not appear to be medical documentation establishing the need for a hand-held assistive device *to aid the claimant in walking or standing* and *describing the circumstances for which it is needed* (i.e., whether she requires a cane all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." (*Id.* at PageID.54) (citing SSR 96-9p) (emphasis added). The ALJ also found the only medical opinion requiring a cane to be unpersuasive. The ALJ articulated specifically her reasoning for discounting Plaintiff's allegations that her cane was medically necessary and for finding the only medical opinion related to the cane unpersuasive. *Perdue v. Colvin*, No. 15-14006, 2017 WL 362668, at *6 (E.D. Mich. Jan. 9, 2017) *report and recommendation adopted* 2017 WL 976790 (E.D. Mich. Mar. 14, 2017) (finding that the claimant was properly limited to light work "given the lack of documentation that a cane was medically necessary. . . .").

While the ALJ did not specifically discuss Dr. Sarsam's June 2023 notation that Plaintiff should use a cane for "safety [and] mobility," the ALJ specifically addressed Dr. Sarsam's June 2023 medical opinion and found the opinion to be internally inconsistent throughout and the extreme limitations were not supported by the record. The ALJ, however, need not discuss every piece of evidence in the record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted); *see also Walker v. Sec'y of Health & Hum. Servs.*, 884 F.2d 241, 245 (6th Cir. 1989) (Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ.).

Here, the ALJ is correct that the only medical documentation addressing Plaintiff's need for a cane is Dr. Sarsam's June 2023 note of "[c]ane for safety & mobility." (*Id.* at PageID.853). Even so, in the medical opinion completed the same day, Dr. Sarsam also checked the "No" box as to whether Plaintiff required the use of a cane to ambulate. (*Id.* at PageID.767). Not only are Dr. Sarsam's June 2023 medical records internally inconsistent as to whether Plaintiff requires a cane, his single notation also does not describe the circumstances for which a cane is needed, such as "indicate the frequency with which the cane should be used, its purpose, or its limit upon Plaintiff's ability to perform light work." *Palmer*, 2020

14

WL 5209358, at *4; *Marko*, 2017 WL 3116246, at *5.  It is unclear from the record if Dr. Sarsam intended to differentiate between the need for a cane "to ambulate" rather than the need for a cane for "safety & mobility," but this inconsistency in the June 2023 record supports the ALJ's findings.

The undersigned suggests the record before the ALJ, which the ALJ referenced, did not support the medical necessity of a cane and the ALJ was not, therefore, required to discuss the cane in formulating the RFC.  Here, substantial evidence supports the ALJ's conclusion and Plaintiff has not demonstrated that she is more limited than her RFC.

Although the undersigned suggests that the ALJ did not commit an error in crafting the RFC, even if there were error, it would be harmless.  Failing to include a cane use limitation in the RFC or explaining why she found it unnecessary "is harmless when the claimant cannot show that the ultimate determination—that there were a significant number of available jobs—would have been different had such a limitation been included."  *Austin*, 2020 WL 9460505, at *14 (citation omitted).  During the colloquy between the ALJ and the VE at the hearing, the ALJ posed a series of hypothetical questions to find out whether a person with Plaintiff's relevant characteristics could perform any work, after the VE ruled out Plaintiff's ability to do her past relevant work.  (ECF No. 9-1, PageID.98–99).  The ALJ uses the hypothetical questions to determine whether there are a significant

15

number of available jobs for a person with the claimant's characteristics and limitations. If there are, then the claimant is not disabled.

Hypothetical one became the RFC—it limited Plaintiff to unskilled, light work. (*Id.* at PageID.98–99). The ALJ added cane use in the second hypothetical. (*Id.* at PageID.99). The VE responded that an individual with that RFC still had one occupational group within the light work category, office clerk, and that additional occupations were eliminated due to the "contact with the public" limitation, not the use of a cane limitation. (*Id.*). As the court in *Austin* noted, courts in the Sixth Circuit have held that an ALJ's failure to include a cane use limitation in the RFC "was harmless error when the VE's testimony identified several jobs at the sedentary level that would be available to the claimant had the use-of-a-cane limitation been integrated into the RFC finding." *Austin*, 2020 WL 9460505, at *14 (collecting cases). Because the VE testified that a person with Plaintiff's characteristics and limitations could perform jobs in the national economy at the light work level *and while using a cane to walk*, the ALJ's decision to omit cane use from the RFC is harmless error, if it is at all error.

In summation, while the Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an

opposite conclusion.'" *TNS, Inc.*, 296 F.3d at 395 (quoting *Universal Camera Corp.*, 340 U.S. at 487); *Blakley*, 581 F.3d at 406 (quoting *Key*, 109 F.3d at 273).  Ultimately, the ALJ's decision "cannot be overturned if substantial evidence, or even a preponderance of the evidence, supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).  Here, while there is some evidence in support of Plaintiff's position that she began using a cane to walk toward the end of the relevant period on appeal, such as her own statements and a single notation in her medical records, there is substantial evidence in support of the ALJ's RFC conclusion which omits a limitation for cane use.  Accordingly, the ALJ's decision in this regard should be affirmed.

Because the RFC is supported by substantial evidence, the undersigned need not address Plaintiff's conclusion that the use of a cane is inherently inconsistent with the demands of light work.  The undersigned would note, however, that "there is no *per se* rule that use of a cane to ambulate precludes performance of all light jobs." *Scott v. Comm'r of Soc. Sec.*, No. CV 18-10261, 2018 WL 6175375, at *6 (E.D. Mich. Nov. 5, 2018), *report and recommendation adopted*, 2018 WL 6171602 (E.D. Mich. Nov. 26, 2018) (citation omitted).

## V.    RECOMMENDATION

Plaintiff has the burden of proof on her statements of error.  *Walters*, 127

F.3d at 529.  From a review of the record as a whole, the undersigned suggests that the ALJ applied the correct legal standards in reaching her decision and substantial evidence in the record supports her findings.  Plaintiff has not shown legal error that would upend the ALJ's decision.  For all these reasons, it is the RECOMMENDATION of the Magistrate Judge that Plaintiff's *Motion for Summary Judgment* (ECF No. 12) be **DENIED**, the Commissioner's *Motion for Summary Judgment* (ECF No. 14) be **GRANTED**, and the Commissioner's decision is **AFFIRMED**.

The parties here may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Tchrs. Loc. 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

18

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections lack merit, it may rule without awaiting the response.

Date: March 10, 2026                                s/Curtis Ivy, Jr.
                                                    Curtis Ivy, Jr.
                                                    United States Magistrate Judge